## Case No. 17,127.

Ex parte WALTON.

[1 Cranch, C. C. 186.] [1]

Circuit Court, District of Columbia. Nov. Term, 1804.

NATURALIZATION.

Five years continued residence was necessary under the naturalization law of 1802 [2 Stat. 153].

Application to be naturalized. Affidavit that "he has resided within the United States upwards of six years, that during that period he was absent a short time upon business, but left his family in the United States. That he hath resided for more than one year last past in Alexandria, in the District of Columbia, and that during all the aforesaid time he has behaved as a man of a good moral character, attached to the principles of the constitution of the United States, and well disposed to the good order and happiness of the same. That the said Walton removed to the United States, as this deponent understood, and doth verily believe, with the intention of making the said States his place of permanent residence, and that he hath not relinquished that intention."

## Case No. 17,128.

In re WALTON et al.

[Deady, 442.] [2]

District Court, D. Oregon. Aug. 8, 1868.

BANKRUPTCY—PROOF OF CLAIMS—PRACTICE—OBJECTIONS.

1. Where a creditor obtains a confession of judgment from an insolvent debtor, and it appears probable that such confession was taken with knowledge of the debtor's insolvency, the proof of such creditor's claim will be postponed until after the choice of an assignee.

[Cited in Re Leland, Case No. 8,230.]

2. Objection to proof of a claim must be made by written allegations, specifying with reasonable certainty the grounds of such objection.

In bankruptcy.

J. M. Whalley and M. W. Fechheimer, for petitioning creditors.

Erasmus D. Shattuck, for A. & L. and H. F.

[1] [Reported by Hon. William Cranch, Chief Judge.]
[2] [Reported by Hon. Matthew P. Deady, District Judge, and here reprinted by permission.]

DEADY, District Judge. On July 2, 1868, a petition was filed in this court, in bankruptcy, against J. J. and M. Walton, merchants in Eugene. On July 11, they were without opposition, duly declared bankrupts. On August 3, Henry Failing and Allen & Lewis by C. H. Lewis, appeared before the register and offered to prove claims against the estate of the bankrupts—that of A. & L.'s being $3,982.64, and H. F.'s $2,002.33. Objection being made by the petitioning creditors to the proof of these claims until an assignee had been chosen, the register, under section 4 of the act [of 1867 (14 Stat. 519)], has adjourned the matter into court for decision. Accompanying the register's statement of the matter, is a copy of the schedules and warrant, and the depositions of C. H. Lewis and Henry Failing, respectively, in proof of the claims above mentioned. From these, it appears, that A. & L. and H. F., are wholesale merchants in Portland, and that the Waltons being indebted to them on account, for goods, etc., sold and delivered, they severally induced the bankrupts to confess judgments in their favor for the above mentioned sums. That said judgments were confessed, without action, on Saturday, June 27, 1868, and that on the Monday following, A. & L. and H. F., acting through the same attorney, sued out executions and levied upon the property of the bankrupts, including the stock of goods on hand, supposed to be worth about $4,000. At the date of the judgments the bankrupts were insolvent—their indebtedness being largely in excess of the value of their assets. So far as the bankrupts are concerned, the confessing of these judgments was an act of bankruptcy. It must be inferred from a comparison between their indebtedness and assets, as shown by their schedules, that they were then insolvent. Section 39 of the act makes a confession of judgment by an insolvent or bankrupt or given in contemplation of bankruptcy or insolvency an act of bankruptcy. To be in a state of insolvency or to contemplate insolvency, is simply for the debtor to be or contemplate being unable to pay his debts as they become payable. A person may be insolvent without having committed an act of bankruptcy—an act for which he may be declared a bankrupt by proceedings in invitum. Buckingham v. McLean, 13 How. [54 U. S.] 167; In re Black [Case No. 1,457].

After the decree in bankruptcy in this case had passed, A. & L. and H. F., through their attorney, directed the sheriff, holding the executions against the bankrupts, to turn over the personal property levied on to the messenger, and return the executions to the clerk's office, which was done. By the law of this state, these judgments were a lien upon the real property of the bankrupts, in the schedule mentioned, in favor of the judgment creditors and they also acquired a lien upon the personal property, by virtue of the levy of the execution thereon. By means of these proceedings these creditors received a preference over the other creditors of the bankrupts. Until the contrary is shown, it must be presumed that this preference was intended to be given by the bankrupts, for the reason that it was the natural and probable consequence of their act—the confessing of judgment to A. & L. and H. F., while in a state of insolvency. If the creditors had no reason to believe that the bankrupts were insolvent or contemplated insolvency, when they took these judgments and obtained this preference, then their judgments are good, but under section 20 of the act they can only be admitted to prove the balance of their debts after deducting the value of their liens. This involves an arrangement with the assignee, and presupposes the choosing of the assignee before they are allowed to prove their debts. But if, on the other hand, these creditors had reason to believe that the bankrupts were insolvent or contemplated bankruptcy or insolvency, when they took these judgments and obtained this preference, then they are not entitled to vote for an assignee. "No person who has received any preference contrary to the provisions of this act, shall vote for or be eligible as assignee." Bankrupt Act, § 19. And under section 23, they would not be allowed to prove their debts until they surrendered to the assignee all property, etc., or advantage received by them under such preference.

The last clause of section 39 authorizes the assignee to recover back—obtain by judicial proceedings—any property transferred by a bankrupt contrary to the act, if the person receiving the property had "reasonable cause to believe that a fraud on the act was intended or that the debtor was insolvent, and such creditor shall not be allowed to prove his debt in bankruptcy." Taking this section alone, and a creditor who has received a preference contrary to the act, cannot be allowed to prove his debt at all—in other words he is precluded from recovering any part of the assets of the bankrupt. But I am inclined to the opinion, that section 23 must be considered with section 39, and that a creditor who has received a preference contrary to this act, may surrender such preference, voluntarily to the assignee, and be allowed to prove his debt and share in the estate. See In re Walton [Case No. 17,-129]. But if such creditor does not voluntarily surrender the property or benefits obtained by such preference, and the assignee is driven to "recover back" the same by judicial proceedings, then I think he is debarred from proving his debt or sharing in the estate. Under section 23, if the judge entertains doubts of the validity of the claim, or the right of the creditor to prove it, and is of opinion that such validity or right ought to be investigated by the assignee, he may

postpone the proof of the claim until the assignee is chosen.

I have no doubt as to the validity of these claims, that is. I am satisfied that they are genuine—not fictitious—and justly due by the bankrupts to the creditors. But the right of the creditors to prove them is not so plain a question. If the creditors received this preference not contrary to the provisions of the act, then these proceedings as to them were valid, and as we have seen they cannot prove their debt, but only such part of it as the assignee may ascertain is due, after deducting the value of the property held under the lien of their judgments. As this arrangement cannot be made until after the choice of an assignee, in the nature of things these creditors must be precluded from voting for an assignee. But if they are now allowed to prove their debts, then under section 13, they would be qualified to vote for assignee. But if this preference was received contrary to the provisions of the act, then under the most favorable view of the law for these creditors, they could not be allowed to participate in the election of the assignee, and therefore should not be allowed to prove their debts until an assignee was chosen, and had an opportunity to investigate the matter and resist the application, if justice to the other creditors requires it. I do not now propose to decide absolutely the question whether these creditors had reason to believe these bankrupts were insolvent when they took these judgments. A judgment by confession is an effectual means of transferring property from a debtor to a creditor, and I do not think it can be considered as an act done in the ordinary course of the debtor's business. It is therefore prima facie fraudulent—that is, contrary to the provisions of the act, both as to the debtor and the creditor receiving it. The burden of proof is upon the creditor to overcome this presumption. In accordance with these conclusions I will direct the following order to be certified to the register:

Order: Upon reading and consideration of the statement and accompanying papers reported to me by the register, touching the claims of Allen & Lewis and Henry Failing, against the estate of the bankrupts—it is ordered, that the proof of such claims be postponed until an assignee of the estate has been chosen or appointed; and that if the proof of such claims is thereafter objected to, it must be done by a written allegation, specifying with reasonable certainty and brevity, the grounds of such objection; and thereupon the register, after notice to the assignee, must proceed to take the evidence for and against such objection, and report the same to the court, with his findings of facts and law thereon.

[For a motion to expunge the claim of E. P. Coleman from the list of claims against the estate of the bankrupts, see Case No. 17,129. See, also, Id. 17,130.]